SEA-LAND SERVICE, INC., Plaintiff-Appellee,

v.

Pedro SELLAN, Defendant-Appellant.

No. 99-12571.

United States Court of Appeals,

Eleventh Circuit.

Oct. 26, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 98-01311-CV-JLK), James Lawrence King, Judge.

Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI*, Judge.

RESTANI, Judge:

Appellant Pedro Sellan ("Sellan") appeals from a final judgment declaring enforceable a Settlement Agreement (the "Agreement") to preclude plaintiff from proceeding on an injury claim against appellee Sea-Land Service, Inc. ("Sea-Land"). Sellan alleges that the relevant provision of the Agreement is voided by The Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. § 55 (1994), because the provision exempts Sea-Land, a common carrier, from liability under the Act by releasing it from future claims.

We affirm the district court's holding that the provision at issue is part of a valid settlement of a present claim of total disability for sea duty and represents an enforceable agreement that Sellan will not work for Sea-Land in the future, and if he does, that Sea-Land is not responsible for his injuries. Thus, Sellan is precluded from pursuing the new injury claim against Sea-Land.

*Jurisdiction*

The district court had federal question jurisdiction over the complaint seeking declaratory relief pursuant to 28 U.S.C. § 2201 et seq. and 28 U.S.C. § 1333. Appellate jurisdiction is under 28 U.S.C. § 1291, as this is an appeal from a final judgment.

*Facts*

On November 6, 1993, while employed as a chief steward aboard Sea-Land's vessel, Sea-Land Expedition, Sellan experienced an onset of low back pain, which he reported occurred after moving a heavy box of meat. As a result of this injury, Sellan brought a claim against Sea-Land for total disability from work

*Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

at sea. Sea-Land paid all maintenance and all medical expenses for Sellan's November 6, 1993, back injury claim, including surgery.

On January 5, 1995, Sellan's surgeon reported to Sea-Land that Sellan was permanently not fit for duty. On May 12, 1995, he found Sellan had reached maximum medical improvement and assigned a permanent disability of 56% of the total body according to the Minnesota guidelines.

On account of Sellan's November 6, 1993 injury and its consequences, Sea-Land paid Sellan $364,500 in exchange for a Release and a "Settlement Agreement Not to Sail or Work" dated July 27, 1995. In the Agreement, Sellan acknowledged "that [his] doctors have recommended that he no longer engage in the career as merchant seaman" and "[f]or this reason [he] further states and acknowledges that it is for his own benefit and safety not to seek employment and/or to navigate aboard vessels owned, managed, and/or operated by Sea-Land Service, Inc."

Paragraph 4 of the Agreement reads:

In addition to, and as an integral part of, the above referenced Release of All Rights, and in consideration of total payments equaling Three Hundred Sixty Four Thousand Five Hundred and 00/100 Dollars ($364,000.00), the parties have agreed that Mr. Sellan will not work, sail and/or navigate, and/or seek to sail, navigate or work, in any capacity, including shore relief, aboard vessels owned, managed, and/or operated by Sea-Land Service, Inc., and/or any of its affiliates and/or subsidiaries, in the future.

In pertinent part, paragraph 5 reads[1]:

However, if for any reason, including oversight or consent, Mr. Pedro Sellan is able to re-engage in service aboard a vessel owned, managed and/or operated by Sea-Land Service ... then he shall do so at his own risk, and the company will bear no responsibility for an illness and/or injuries he may suffer while in service aboard any such vessel.

In the spring of 1997, Sellan paid his back dues to the Seafarer's International Union and, on April 14, 1997, underwent a union physical for purposes of assessing his duty status. The union doctor performing the physical testified that he was not told by Sellan of the medical history surrounding the November 6, 1993 incident. Accordingly, Sellan was declared fit for duty.

During a time when Sea-Land was unable to conduct pre-employment background checks because of technical difficulties Sellan was dispatched from his union's hiring hall to join plaintiff's vessel, Sea-Land

---

[1]While Sellan argues that the Agreement contemplated his return to work, we conclude this argument is meritless. We give weight to the plain meaning of the title of the Agreement: "Settlement Agreement Not to Sail or Work." Also, the district court found that the agreement not to sail or work was a necessary term of the contract, without which Sea-Land would not have entered into the settlement agreement. *See Sea-Land Serv., Inc. v. Sellan,* 64 F.Supp.2d 1255, 1259 (S.D.Fla.1999). The district court also found that the "settlement was structured to cover [Sellan's] inability to return to the sea for the remainder of his career and was intended to supplement the salary of any sedentary job he obtained." *Id.* at 1261.

Crusader, again as chief steward. The collective bargaining agreement gives the union the power in the first instance to designate the employees to be sent to a Sea-Land vessel. When the Union dispatches a seaman to a vessel, he or she may pass on the job for any reason and wait for the next available assignment. Sellan, however, boarded the Sea-Land Crusader without informing anyone about either the Agreement never again to sail aboard a Sea-Land vessel or the finding of permanent not-fit-for-duty status.

On October 31, 1997, about three weeks after he returned to work, Sellan reported re-injuring his back aboard the Sea-Land Crusader in circumstances substantially identical to his November 6, 1993, injury. The October 31, 1997, injury occurred in the ordinary course of performance of duties as chief steward, again as a claimed result of lifting a heavy box of meat in the vessel's galley.

Sea-Land commenced this action for judgment declaring the Agreement with Sellan enforceable to preclude him from pursuing an action in Florida state court seeking recovery of damages on account of the October 31, 1997, injury. The district court found that Sellan, with full understanding and in exchange for appropriate consideration, had executed a general release and entered into the Agreement, and as a result was bound by its terms; and that the Agreement did not run afoul of FELA, 45 U.S.C. § 55. The district court specifically enforced the terms of the Agreement and entered final declaratory judgment in Sea-Land's favor.

The only issue pursued by Sellan in this appeal is whether Paragraph 5 of the Agreement Not to Sail or Work violates the following provision of FELA:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void ....

45 U.S.C. § 55.

### *Discussion*

Appellant challenges none of the district court's factual findings. We apply a *de novo* standard of review to the issue of law before us, that is, whether Paragraph 5 of the agreement violates FELA. *Godfrey v. BellSouth Telecom., Inc.,* 89 F.3d 755, 757 (11th Cir.1996).

The Supreme Court has held that a release does not violate FELA where it is "not a device to exempt from liability but is a means of compromising a claimed liability ...." *Callen v. Pa. R.R. Co.,* 332 U.S. 625, 631, 68 S.Ct. 296, 92 L.Ed. 242 (1948). In *Callen,* the Court upheld a general release, in exchange for two hundred and fifty dollars, of the employer railroad from liability for specific injuries sustained in an accident. *Callen,* 332 U.S. at 626, 68 S.Ct. 296. In contrast, in *Philadelphia, Baltimore & Washington R.R. Co. v.*

*Schubert,* 224 U.S. 603, 612-13, 32 S.Ct. 589, 56 L.Ed. 911 (1912), and *Duncan v. Thompson,* 315 U.S. 1, 7-8, 62 S.Ct. 422, 86 L.Ed. 575 (1942), the Court rejected under FELA general releases that did not involve express settlement of claims for specific injuries.

Rights under FELA fundamentally are premised on the existence of an employment relationship. The purpose of 45 U.S.C. § 55 is to prevent employers from undermining the liability scheme created by FELA for their negligence. *Philadelphia,* 224 U.S. at 609, 32 S.Ct. 589. It prevents employers from restricting FELA rights as a condition of employment. *See Wicker v. Consol. Rail Corp.,* 142 F.3d 690, 700-01 (3rd Cir.1998).

Here, Sea-Land compromised a claim of permanent total disability and attempted to prevent a re-injury to Sellan, which would result in detriment to him and to Sea-Land. The Agreement was designed to make sure that a totally disabled seaman would not work for Sea-Land as a seaman under the Jones Act. Such an agreement is not a violation of a federal statute designed to protect railroad workers and seamen from overreaching as a condition of either obtaining or maintaining employment.

In general, an employer is entitled to refuse re-employment to avoid liability for re-injuries following a lifetime settlement for a claimed permanent disability. *See, e.g., Sands v. Union Pac. R. Co.,* 148 F.Supp. 422 (D.Or.1956)(injured railroad worker seeking re-employment estopped from asserting fitness for duty given high risk of re-injury). Under FELA, a carrier will be liable if its negligence "played any part, even the slightest, in producing the employee's injury." *Armstrong v. Kansas City S. Ry. Co.,* 752 F.2d 1110, 1113 (5th Cir.1985). FELA employers also may be liable if they negligently assign employees tasks that are beyond their physical capacities. *Fletcher v. Union Pac. R. Co.,* 621 F.2d 902, 908-09 (8th Cir.1980). Refusal to rehire permanently and totally disabled seamen appears to be the only effective means of both protecting them from further injury and satisfying the employer's duties and, hence, foreclosing a shipowner's liability for future harm to such seamen.

Here, Sellan claimed that it was not safe after his November 6, 1993, accident for him to work at sea and that he was totally disabled and unable to do the work he was performing when allegedly injured aboard the Sea-Land Crusader. Sea-Land could bargain for an agreement settling such a claim and barring Sellan's future employment on its vessels, and it could put teeth in the agreement by leaving the risk of re-injury with Sellan.

Sellan heavily relies upon the Sixth Circuit's determination that under FELA, an employer's release

"must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Babbitt v. Norfolk & W. Ry. Co.,* 104 F.3d 89, 93 (6th Cir.1997). In *Babbitt,* the employer wanted to "buy its peace" by having employees sign a general release upon retirement in order to ensure for the employer no further exposure to liability. *Id.* at 91. The court remanded for the district court to determine whether the release was executed as part of a settlement for damages sustained for specific injuries. *Id.* at 93.

Here, in contrast, there clearly was a settlement of current injury claims. Sellan received medical advice during both his treatment and the settlement negotiations relevant to the risk of re-injury. On January 5, 1995, Sellan's neurosurgeon and treating physician declared Sellan "100 per cent disabled to resume his former job on the ship ...." Sea-Land's Trial Ex. A, at 3. The doctor further recognized the risk of Sellan re-injuring his back by placing severe restrictions on Sellan's performing future tasks, including lifting more than 15 pounds, pushing, pulling, and standing or sitting for long periods of time. *Id.* The doctor's subsequent letter of May 12, 1995 confirmed Sellan's status as permanently not fit for duty. Sea-Land's Trial Ex. D, at 1.

Section 5 of FELA "allows an employer to negotiate a release of claims with an employee provided the release is limited to those risks which are known by the parties at the time the release is negotiated." *Wicker,* 142 F.3d at 702. Contrary to Sellan's argument, enforcement of the Agreement is consistent with the *Wicker* holding that:

> a release does not violate § 5 [of FELA] provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed.

*Id.* at 701. The Agreement was intended to prevent the very risk at issue here.

Further, under the Agreement Sellan was paid both for his current expenses and for his entire work-life expectancy. The Agreement was intended both to prevent Sellan from suffering re-injury and for Sea-Land to avoid paying again what had already been paid, a work lifetime of compensation. Plaintiff cites a number of cases dealing with post-release liability for new injuries or aggravation of old injuries. *E.g., Wilson v. CSX Trans., Inc.,* 83 F.3d 742 (6th Cir.1996) (release ineffective to shield employer from liability for new injury after re-employment); *Stephens v. Ala. State Docks Term. R.,* 723 So.2d 83 (Ala.Civ.App.1998) (prior signed release does not prevent recovery for aggravation of the original injury that is caused by a subsequent on-the-job accident). Such cases are inapposite. Plaintiff cites no case in which

a previously totally disabled employee was permitted to recover under FELA for injuries incurred as a result of breaching an agreement not to return to work. Here Sellan accepted all of the benefits of the Agreement. He is not permitted to benefit from breaching the Agreement by returning to work at Sea-Land. *See Ballard v. El Dorado Tire Co.,* 512 F.2d 901, 907-08 (5th Cir.1975) (promissor may not benefit from his own failure of performance). As noted in *Wicker,* 142 F.3d at 698, cases involving the validity of releases under FELA are fact-driven. The entire fact pattern at issue here requires enforcement of the Agreement.

*Conclusion*

Sellan received the advantage of a settlement that fully covered his medical expenses and was intended to compensate him for a lifetime of work. The settlement agreement included provisions forbidding future employment by a totally disabled seaman that would expose him to known and unacceptable risks. The settlement agreement properly left the risk of future injury with Sellan should he breach the Agreement by returning to work. Sellan accepted the benefits of his bargain and then breached it by surreptitiously gaining re-employment as a seaman with Sea-Land. Sellan cannot succeed under these facts. Nor can Paragraph 5 of the Agreement be read in isolation. It is not intended to condition employment with an exception from liability; it is part of a valid overall settlement of a specific claim of injury, and it does not run afoul of FELA.

The judgment of the District Court is

*AFFIRMED.*