[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 7, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-12257

_____

D. C. Docket No. 99-01298 CV-UUB

ROGER LONDON,

Plaintiff-Appellee,

versus

WAL-MART STORES, INC.,

Defendant,

CHASE MANHATTAN BANK, USA,
NATIONAL ASSOCIATION, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 7, 2003)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and HODGES*,
District Judge.

_____

*Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida,
sitting by designation.

DUBINA, Circuit Judge:

American Bankers Ins. Co., American Bankers Life Assurance Co. (together, "Bankers") and Chase Manhattan Bank USA, N.A. (collectively, "Appellants") appeal the district court's grant of class certification to Roger London ("London") in his suit against Appellants.[1] London's suit alleged that Appellants violated Florida laws regulating insurance, specifically laws affecting credit life insurance. The district court granted summary judgment to London on several issues, finding that Appellants violated Florida Statutes sections 627.679(1)(c)(1) and 627.682 by procuring insurance contracts without making the required disclosures and without first having the application forms approved by the Florida Department of Insurance ("DOI"). After granting London's motion for summary judgment on several issues, the district court granted class certification. For the reasons that follow, we reverse the district court's grant of class certification.

## I. OVERVIEW

London sued Appellants in federal district court, alleging that Appellants had violated the federal Truth in Lending Act ("TILA"), but London later added claims under Florida law. London's TILA claims were settled; thus, the current

---

[1] London voluntarily dismissed Wal-Mart as a defendant.

action involves only London's state law claims. Nonetheless, in its discretion, the district court continued to exercise supplemental jurisdiction over the state law claims pursuant to its authority under 28 U.S.C. § 1367(c). London's claims against Appellants involve Appellants' selling of LifePlus Credit Insurance ("LifePlus") on in-store applications for the Chase/Wal-Mart MasterCard.

The theory of London's claims is that his contract with Appellants was illegal under Florida statutes which regulate the sale of insurance in the state. London argues that under Florida common law, an illegal contract is void and unenforceable, and an innocent party to such a contract is entitled to restitution. No economic injury is required in such cases because Florida common law recognizes paying consideration pursuant to an illegal contract as an injury per se. Thus, London argues that, as an innocent party to an illegal contract, he is entitled to restitution under Florida common law.

In the district court, London argued that his contract with Appellants was illegal due to several violations of state law by Appellants. London alleged that Appellants violated Florida Statutes section 627.679(1)(c)(1), which requires that the creditor agent must disclose the following information to the potential buyer of credit life insurance: (1) that the buyer may assign other policies to cover the loan; (2) that the buyer may buy a policy to cover the loan from any provider; and (3)

3

that purchasing the policy from the loan provider is not a prerequisite to obtaining the loan. FLA. STAT. ANN. § 627.679(1)(c)(1) (2002).

In addition, London alleged that the Appellants violated Florida Statutes section 627.410, which requires that all insurance application forms be filed with and approved by the Florida DOI before use, and section 627.682, which applies the same requirements to applications for credit life insurance. FLA. STAT. ANN. §§ 627.410, 627.682 (2002). London also alleged that Bankers was an "agent" for purposes of section 627.679(1)(c)(1), making the statute's disclosure requirements binding on Bankers.

## II. FACTUAL BACKGROUND

Chase and Wal-Mart offer a co-branded MasterCard through "take-one" applications at Wal-Mart stores. In conjunction with the MasterCard, Chase offers LifePlus coverage. LifePlus is credit life insurance and also pays the insured's minimum monthly payments in the event of the insured's disability, unemployment, or involuntary leave of absence. Bankers issued master group insurance policies to Chase. LifePlus is also offered through direct-mail MasterCard applications, through monthly credit card statements, and via telemarketing solicitations to MasterCard holders.

4

On December 14, 1998, while shopping at a Wal-Mart in Hallandale, Florida, London filled out an application for a Chase/Wal-Mart Master Card and enrolled in the LifePlus program. London has a B.S. in political science and is a Vice- President of Salomon Smith Barney. He has about thirty credit cards. He does not need LifePlus and admits that he did not think he needed LifePlus in order to get the Chase/Wal-Mart credit card.

In deposition testimony, London stated that he later discussed his enrollment in LifePlus with his friend and lawyer, Robert Ader ("Ader"). London and Ader have been close friends since high school. In addition, London has been Ader's stockbroker for many years. Ader had obtained a settlement in a similar class action suit against Rooms-To-Go, and Ader became London's counsel in the present suit. Ader advised London not to cancel his LifePlus coverage, to continue to pay the premiums for the coverage, and to file suit against Appellants. London followed Ader's advice, even though at that time he had paid only $ 0.41 in premiums.

Relying on *American Mutual Fire Insurance Co. v. Illingworth*, 213 So. 2d 747 (Fla. Dist. Ct. App. 1968), the district court granted London summary judgment on several issues. *Illingworth* held that an exclusionary endorsement to an insurance policy that the insurance company had failed to file with the Florida

insurance commissioner, in violation of Florida law, rendered the endorsement void. 213 So. 2d at 749-50. The district court found that under *Illingworth*, a party's violation of Florida Statutes sections 627.410 and 627.682 would make the contracts at issue void and unenforceable. The district court also found that Bankers was an "agent" for purposes of section 627.679(1)(c)(1), making the statute's disclosure requirements binding on Bankers.

The court found that Chase and Bankers violated sections 627.410 and 627.682 and by failing to file a copy of the "Take-One" in-store application forms with the DOI prior to using the forms. The court also found that Chase and Bankers violated section 627.679(1)(c)(1) by failing to notify their customers that the customers' other insurance policies would be assignable to cover any balance remaining on the customers' credit cards at their death. Thus, under Florida common law, the contracts were illegal, and those who had paid premiums on the illegal contracts were entitled to restitution of the premiums they had paid.

Bankers argued that section 627.682 did not apply to the in-store enrollment form because it was not an "application" under the terms of the statute. The district court rejected this argument on the grounds that not everyone who checked the box for the credit life insurance was actually eligible for the

insurance. Thus, the district court reasoned that, under the terms of the statute, checking the box was an "application" rather than an "enrollment."

Bankers also argued that the disclosure requirements of section 627.679(1)(c)(1) are only mandatory when lenders *require* that the credit/loan be covered by insurance. The district court found that the plain language of the statute foreclosed this argument, because section 627.679(1)(c) begins, "Before *any* credit life insurance may be sold." FLA. STAT. ANN. § 627.679(1)(c) (2002) (emphasis added).

The district court granted Bankers' cross-motion for summary judgment on the claims based on the disclosures required by sections 627.679(1)(c)(2) and (c)(3) because the court found that it was "undisputed that the life insurance policy did not contain the deferral of coverage and age termination restrictions regulated by [these sections]." The district court also granted Bankers' motion for summary judgment on London's request for injunctive relief requiring that the Appellants comply with the law in the future, noting that the supervision of insurance providers was the job of the DOI, rather than the courts. The court also found that any insured who wished to retain his or her LifePlus coverage was entitled to do so.

The district court eventually certified the following "opt-out" class under Federal Rule of Civil Procedure 23(b)(3): "All Chase/Wal-Mart accountholders purchasing LifePlus insurance from the Defendants in the state of Florida from May 6, 1995 to the present (a) whose accounts are not in default, and (b) who have not received LifePlus insurance benefits." Appellants moved for reconsideration, but the district court denied their motion. This court granted Appellants' petition for review of the class certification pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.

## II. ISSUES

1. Whether London lacks standing because he failed to allege any injury in fact.

2. Whether the district court's grant of class certification after the district court had ruled on the merits violates the rule against one-way intervention.

3. Whether London can fairly and adequately represent the class, as required by Federal Rule of Civil Procedure 23(a)(4).

4. Whether London's claims are typical of the claims of the class, as required by Federal Rule of Civil Procedure 23(a)(3).

8

5. Whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," as required by Federal Rule of Civil Procedure 23(b)(3).

6. Whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," as required by Federal Rule of Civil Procedure 23(b)(3).

### III. <u>STANDARDS OF REVIEW</u>

The issue of whether the plaintiff lacks standing is jurisdictional; therefore, this court must address it. *James v. City of Dallas*, 254 F.3d 551, 562 (5th Cir. 2001)*, cert. denied*, 534 U.S. 1113, 122 S. Ct. 919, 151 L. Ed. 2d 884 (2002). As an issue of law, the question of standing receives de novo review. *See Sea-Land Serv., Inc. v. Sellan,* 231 F.3d 848, 851 (11th Cir. 2000).

"We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." *James*, 254 F.3d at 562 (internal citations and quotations omitted). Nonetheless, "[W]hether the district court applied the correct legal standard in reaching its decision on class certification . . . is a legal question that we review *de novo*." *Id.*; s*ee also Sea-Land,* 231 F.3d at 851; *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997).

9

# IV. <u>DISCUSSION</u>

## A. Standing

Appellants argue that London lacks Article III standing because he suffered no "injury in fact." The Supreme Court has stated that the first element of "the irreducible constitutional minimum of standing" is that "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal quotations and citations omitted).

Appellants argue that London did not suffer any "injury in fact" traceable to Appellants because London admits that he knew he did not have to enroll in LifePlus to obtain the Chase/Wal-Mart card. Furthermore, London admits that the enrollment form states that the LifePlus coverage was optional and that he did not read the credit card application or any of the material he received with his new credit card. Because London admits that he did not read any of the information he was given, he does not allege that he would have purchased other insurance to cover his credit card if he had been informed of his right to do so or that he would have refused the LifePlus coverage if the proper disclosures had been made.

10

Nonetheless, London argues that "[t]he injury that gives rise to a Florida common-law restitution claim is providing consideration pursuant to an illegal contract." London relies on two Florida cases[2] to support his contention that Florida law provides for restitution where the only harm is paying consideration for an illegal contract: *Vista Designs, Inc. v. Silverman, P.C.*, 774 So. 2d 884 (Fla. Dist. Ct. App. 2001)*,* and *Town of Boca Raton v. Raulerson*, 146 So. 576 (Fla. 1933). In *Vista Designs*, Florida's Court of Appeals held that a lawyer who contracted with a client to practice law in Florida where he had no license should be paid nothing, even though he had rendered valuable legal services to the client, because the underlying contract was "void *ab initio* due to illegality." 774 So. 2d at 885.

In *Raulerson,* the Florida Supreme Court held that a self-dealing town commissioner who sold property to the town in violation of a Florida statute had to disgorge the entire purchase price of the property, rather than merely his profit from the sale. The court reasoned that the contract was void because prohibited by statute, and that even though the rule might seem "harsh," it was necessary to protect the public. The court stated that "[t]he statute is upon the books for all to read and heed." The court further noted that if the court were to "apply . . . the

_____

[2]*Illingworth*, discussed *supra* p.5-6, did not involve a claim for restitution.

rule that recovery should be limited to the profit enjoyed from the transgression, it would open the way and extend the invitation to fraud as well as violation of the law. . . . [Then those tempted to break the law] would reason that they had much to gain but naught to lose." 146 So. at 577.

Appellants' attempt to rely on cases which did not arise under Florida law, e.g., *Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315, 319 (5th Cir. 2002) and *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1354 (11th Cir. 2001), is unavailing because such cases are inapplicable to the present suit.

Florida courts recognize paying consideration for an illegal contract as an injury per se. *Vista Designs*, 774 So. 2d at 885; *Raulerson,* 146 So. at 577; *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 306 (S.D. Fla. 2001). Thus, by asserting that he was an innocent party to an illegal contract, London asserts the invasion of an interest legally protected by Florida's common law of contracts and thereby obtains standing.

**B. One-way Intervention**

Appellants argue that the certification order should be reversed because the district court violated the rule against one-way intervention by granting summary judgment to London months prior to granting his motion to certify a class. "One-way intervention" occurs when the potential members of a class action are allowed

to "await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests." *Am. Pipe & Constr. Co. v. State of Utah,* 414 U.S. 538, 547, 94 S. Ct. 756, 763, 38 L. Ed. 2d 713 (1974). Rule 23(c)(2)'s requirement that, in opt-out class actions, notice be given to all class members as soon as practicable was intended by Congress to prevent one-way intervention. *Schwarzschild v. Tse,* 69 F.3d 293, 295 (9th Cir. 1995). Because we reverse the district court's grant of class certification on other grounds, we need not address this issue.

## C. Adequate Representation

Appellants argue that London's friendship and former business relationship with counsel Ader create a conflict of interest. Appellants note that prior to the present lawsuit, Ader had made a large deposit with London after Ader had obtained a settlement in a very similar suit against Rooms-To-Go. After filing the present lawsuit as counsel for London, Ader moved his brokerage account so that London was no longer his stockbroker.

"Among the prerequisites to the maintenance of a class action is the requirement of Rule 23(a)(4) that the class representatives 'will fairly and adequately protect the interests of the class.'" *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000). The

Supreme Court has noted that this requirement applies to both the named plaintiff and counsel. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20, 117 S. Ct. 2231, 2251 n. 20, 138 L. Ed. 2d. 689 (1997). This court has explained that the requirement's purpose is to "protect the legal rights of absent class members":

> Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.

*Lyons*, 221 F.3d at 1253 (internal quotations omitted). Another purpose of the adequacy inquiry is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625-26, 117 S. Ct. at 2250-51; s*ee also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985) (noting that adequacy of representation is essential to protect due process rights of absent class members); *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331, 100 S. Ct. 1698, 1707, 64 L. Ed. 2d 319 (1980) (noting that "the adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between

14

the named plaintiff and the members of the putative class"); *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) (noting that the "incentives" of the class representative must "align with those of absent class members so as to assure that the absentees' interests will be fairly represented") (internal quotations omitted).

The Fifth Circuit has noted "the well-established rule that the party seeking certification bears the burden of establishing *all* elements of rule 23(a)." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) (holding that district court erred by shifting burden to defendants to show that class representatives were inadequate). The court further stated that "[a]dequacy is for the plaintiffs to demonstrate; [the plaintiffs are not entitled to any] presumption of adequacy." *Id.*[3]

Nonetheless, in *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987), this court held that in *securities cases*, as long as class counsel is "competent and zealous," the named plaintiffs are not inadequate merely because "of a perceived lack of subjective interest," but only if "their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the

---

[3]*Berger* was a securities case and thus governed by the Private Securities Litigation Reform Act as well as by Rule 23. Nonetheless, the cited statements are from the Fifth Circuit's discussion of adequacy in general and are not specific to the context of securities litigation. *Berger*, 257 F.3d at 484.

15

case."  However, this court carefully limited its holding to the securities context, noting that neither the Eleventh Circuit nor the Supreme Court has established specific standards for Rule 23(a) adequacy.  Thus, the court concluded, "Because the issue of adequate class representation arises in a wide variety of contexts, it would be inappropriate for us to establish a standard for general application." *Kirkpatrick*, 827 F.2d at 727-28.  In the same case, we stated with approval the general principle that adequacy of representation is primarily based on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class" and "whether plaintiffs have interests antagonistic to those of the rest of the class."  *Id*. at 726 (internal quotations omitted).  In fact, we went on to note that meeting these requirements might still be insufficient if the "named plaintiffs . . . do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative."  *Id.*

This court has noted that "basic consideration of fairness requires that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representative[] at all stages of the litigation where absent members will be bound by the court's judgment."  *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1374 (11th Cir. 1984) (holding that,

16

where named plaintiff was employee of class counsel, district court did not abuse its discretion by denying class certification).

In *Susman v. Lincoln Am. Corp.,* 561 F.2d 86 (7th Cir. 1977),[4] the Seventh Circuit found that one of the named plaintiffs was an inadequate representative because his brother was class counsel. 561 F.2d at 95. The court noted that even though a plaintiff is not entitled to share in the attorney's fees, a plaintiff might still be motivated to maximize the attorney's fee where there is a close relationship between the plaintiff and the attorney. *Id.* The Seventh Circuit explained that "[c]ourts . . . fear . . . the danger of champerty [when there is a] close relationship between the putative class representative and counsel." *Id.* at 91.

The requirement for a stringent examination of the adequacy of the class representative is especially great when, as in this case, the attorney's fees will "far exceed[]" the class representative's recovery. *See Shroder,* 729 F.2d at 1375. In such circumstances, "courts fear that a class representative who is closely associated with the class attorney [will] allow settlement on terms less favorable to the interests of absent class members." *Id.*

---

[4]*Susman* was a securities case but was decided before the enactment of the Private Securities Litigation Reform Act. Thus, the adequacy of class representatives was analyzed only under the requirements of Rule 23.

Thus, in this case, the district court was required to "undertake a stringent . . . examination of the adequacy of representation by the named class representative[]." *See id.* at 1374. However, the district court merely pointed out that London was no longer Ader's stockbroker.

After reviewing the record, we conclude that the district court abused its discretion by ignoring London and Ader's significant personal and financial ties. The long-standing personal friendship of London and Ader casts doubt on London's ability to place the interests of the class above that of class counsel. The close relationship between London and Ader creates a *present* conflict of interest – an incentive for London to place the interests of Ader above those of the class. Furthermore, even though London is no longer Ader's stockbroker, nothing prevents his returning to that role after this litigation is concluded. If London plans to do so, London would have an additional incentive to increase Ader's fees at the expense of the class. Thus, combined with their close friendship, the former financial relationship between London and Ader creates a *potential* conflict of interest.

In summary, because the personal *and* financial ties between London and Ader are very close, and because Ader's recovery will vastly exceed what any of

18

the class members will receive, we conclude that London cannot fairly and adequately represent the class.

## D. Remaining Issues

Because we conclude that London fails to meet Rule 23(a)(4)'s adequate representation prerequisite, the district court's grant of class certification must be reversed. *See Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250. Thus, we need not reach the remaining issues pending in this appeal.[5]

## V. <u>CONCLUSION</u>

---

[5]However, we also note our doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement. Unlike the contracts in *Raulerson* and *Vista Designs*, the alleged illegality of the contracts at issue here occurred through the Appellants' failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations. In addition, the plaintiffs suffered no economic harm.

Under such circumstances, even though economic harm is not an element of the Florida common law claim for restitution, it may be required for superiority under the Federal Rules of Civil Procedure. This is especially likely when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974) (noting that class treatment lacks superiority when damages "shock the conscience"); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973) (holding district court did not abuse discretion when it denied class certification for TILA violations case where class members were not harmed and aggregate of statutory damages would be extremely large); *In re Trans Union Corp. Privacy Litig.,* 211 F.R.D. 328, 350-51 (N.D. Ill. 2002) (finding class action lacked superiority in part because of due process concerns where statutory damages would be "grossly disproportionate" to any actual damage suffered by plaintiffs); *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (finding class certification lacked superiority where violation was technical and aggregation of statutory damages under TILA would be financially devastating for defendant). *But see Fabricant v. Sears Roebuck, Inc.*, 202 F.R.D. 310, 318 (S.D. Fla. 2001) (certifying class on facts almost identical to the present suit).

For the foregoing reasons, we reverse the district court's grant of class certification and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.