**Michael BATEMAN, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**AMERICAN MULTI–CINEMA, INC., and Does 1–10, Defendants.**

No. 2:07–cv–0171 FMC (AJWX).

United States District Court, C.D. California.

Oct. 24, 2008.

Gregory N. Karasik, Ira Robert Spiro, Spiro Moss Barness, Los Angeles, CA, for Plaintiffs.

Joseph E. Laska, III, Robert H. Platt, Manatt Phelps and Phillips, Los Angeles, CA, for Defendants.

## ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

FLORENCE–MARIE COOPER, District Judge.

This matter is before the Court on Plaintiff Michael Bateman's Renewed Motion for Class Certification (docket nos. 28, 48, 50), filed October 16, 2007 and September 22, 2008. The Court has considered the moving, opposition, and reply documents submitted in connection with this motion. The Court deems the matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for October 27, 2008, is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby DENIES Plaintiff's Motion for Class Certification.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the Fair and Accurate Credit Transactions Act ("FACTA"). FACTA requires, in relevant part, that credit or debit card receipts issued to consumers shall not print more than the last 5 digits of the card number or the expiration date upon the receipt. 15 U.S.C. § 1681c(g)(1). Plaintiff Michael Bateman alleges that Defendant American Multi–Cinema issued credit and debit card receipts from its automated box office kiosks that were in violation of FACTA. Specifically, Defendant's kiosks are alleged to have printed both the first 4 digits and the last 4 digits of a credit card on each receipt. Plaintiff filed his Complaint on January 5, 2007, alleging Defendant violated FACTA. However, the Complaint does not allege that Plaintiff or any potential class members suffer or have suffered any actual harm as a result of Defendant's violation. Within two weeks of the Complaint being filed, Defendant corrected its kiosks to fully comply with FACTA.

Plaintiff filed his original Motion for Class Certification on October 16, 2007 (docket no. 28). The Court denied Plaintiff's original Motion because it failed to satisfy the superiority requirement of Federal Rule of Civil Procedure 23(b)(3). The Court found that if certified, the potential statutory damages to be awarded could be enormous and completely out of proportion to any harm suffered by Plaintiff. (Minute Order dated October 31, 2007.) The Court denied the Motion without prejudice, however, as the Ninth Circuit had accepted interlocutory appeal of an analogous case, *Soualian v. International Coffee and Tea LLC,* CV 07–502–RGK (JCx), 2007 WL 4877902 (C.D. Cal. filed June 11, 2007). The parties stipulated to a stay of the case pending the Ninth Circuit's decision in *Soualian.* However, the appeal was recently dismissed after the parties in *Soualian* reached a settlement. The Court thereafter permitted the parties in this case to submit supplemental briefing regarding the impact on class certification of Congress' recent amendment to FACTA, H.R. 4008. (Minute Order dated Sept. 8, 2008.) Plaintiff thereafter filed his Renewed Motion for Class Certification, and a Corrected Renewed Motion for Class Certification on September 22, 2008 (docket nos. 48, 50).

## II. LEGAL STANDARD

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001) (citing *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1233 (9th Cir.1996)). The party seeking class certification bears the burden of demonstrating that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) has been met. *Dukes v. Wal–Mart, Inc.,* 474 F.3d 1214 (9th Cir.2007).

Pursuant to Federal Rule of Civil Procedure 23, one or more members of a class may sue as representative parties on behalf of the entire class only if all of the following four elements are met:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).[1]

In addition, the Court must find that one of the conditions of Rule 23(b) has been satisfied. Rule 23(b) provides that a class action may be maintained if: (1) the prosecution of separate actions would create a risk of (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b). In this case, Plaintiffs seek class certification pursuant to Rule 23(b)(3).

Rule 23(b)(3) provides several factors to consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3).

## III. DISCUSSION

■ In its Renewed Motion for Class Certification, Plaintiff submits three primary arguments to support class certification: (1)

Congress' passage of H.R. 4008 reflects Congressional approval of class actions based upon the printing of extraneous credit card account numbers, (2) the outcome of FACTA class action settlements demonstrates that damages will not be excessive or disproportionate, and (3) other courts have certified FACTA class actions. Plaintiff also has filed a Request for Judicial Notice of legislative materials and recent court decisions related to FACTA. The Court finds that these documents are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201. Defendant also does not dispute the accuracy or authentication of these materials and cites to them in its Opposition papers. Plaintiff's Request for Judicial Notice is therefore granted.

### A. HR 4008

Congress passed the Fair and Accurate Credit Transactions Act ("FACTA") on December 4, 2003, which provides in relevant part, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Pub.L. 108–159, 117 Stat. 1952, codified at 15 U.S.C. § 1681c(g)(1). Congress imposed civil liability for willful noncompliance in the amount of "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A). Congress' stated purpose for passing the Act was "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Pub.L. No. 110–241, § 2, 122 Stat. 1565 (June 3, 2008).

After passage of FACTA, many merchants erroneously understood that its mandate would be satisfied by truncating the account number down to the last five (5) digits while leaving the expiration date displayed on the receipt. *Id.* After the deadline for compli-

---

1. The four requirements for class representatives are commonly referred to by the following short-hand labels, respectively: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

ance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date willfully violated FACTA. *Id.* Congress found that these lawsuits did not allege any actual harm, that proper truncation of the card number by itself was sufficient to prevent fraud or identity theft, and that these lawsuits represented a significant burden on commerce. *Id.* Congress therefore enacted H.R. 4008, the Credit and Debit Card Receipt Clarification Act of 2007 on June 3, 2008, to relieve businesses of potential liability for failing to remove expiration dates from credit card receipts:

> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

Pub.L. No. 110–241, 122 Stat. 1565 (June 3, 2008) (codified at 15 U.S.C. § 1681n(d)). It is clear that H.R. 4008 does not provide Defendant with a safe-harbor for truncating its credit card receipts to eight (8) digits rather than five (5).

█ Plaintiff argues that in passing H.R. 4008 and failing to provide relief for Defendant's situation, Congress implicitly approved of all class actions alleging failure to properly truncate account numbers. Plaintiff cites various portions of the legislative history indicating that legislators believed H.R. 4008 did not relieve businesses from the duty to properly truncate credit card receipts. (Mot. at 6–7.) For example, Representative Mahoney of Florida testified, "H.R. 4008 does not eliminate a business' obligation to properly truncate the account number or to redact the expiration date from its receipts, and it does not protect merchants who printed more than the account number permitted by the

FACT Act." H.R. 4008, 110th Cong., 154 Cong. Rec. H00000–29 (2008).

On the other hand, the congressional record also supports an inference that members of Congress were primarily concerned with credit card receipts displaying the entire credit card account number. As Defendant references in its Opposition, Representative Bean testified, "it is noted by many identity theft experts that individuals who commit fraud by stealing consumers' credit and debit card numbers cannot do so without having the entire correct account number." *Id.* While legislative history is often helpful in determining congressional intent, in this case, it is far from clear whether Congress intended to approve class actions for printing eight (8) digits rather than five (5). The congressional record simply does not address the precise question whether lawsuits for failing to fully truncate credit card receipts should proceed forward as class actions. However, Congress published express findings regarding the purpose of H.R. 4008 within the bill itself:

> Purpose.—The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

Pub.L. 110–241, § 2(b), 122 Stat. 1565 (June 3, 2008). This purpose and policy resolves the case at hand, where Plaintiff has shown no actual harm to any potential class members. Congress' passing of H.R. 4008 reflects disapproval of class certification for a case such as this.

### B. Excessive Damages

Plaintiff points to a half dozen cases in this district that have approved FACTA class action settlements.[2] Plaintiff argues that the outcome of these cases demonstrates it is unlikely that damages will ultimately be excessive or disproportionate to the actual

---

**2.** Plaintiff cites the following FACTA class action settlements: *Bateman v. WF Cinema Holdings LP.*, CV 07–00213 (Johnson, Mag.); *Saunders v. Mann Theatres*, CV 07–01021 (Johnson, Mag.); *Soualian v. Int'l Coffee & Tea, LLC*, CV 07–502

(Klausner, J.); *Clark v. Stein Mart, Inc.*, CV 07–0197 (Chapman, Mag.); *Leowardly v. Oakley, Inc.*, SACV 07–00053 (Carney, J.); *McGee v. Levy Restaurants*, CV 06–7762 (Fairbank, J.).

harm suffered by potential class members. For example, in *Soualian*, Judge Klausner approved a settlement providing class members with 45,000 certificates for one free coffee or tea beverage, worth over $300,000, as well as up to $110,000 in attorneys' fees and up to $2,500 for the class representative. In *Bateman v. WF Cinema Holdings*, Magistrate Judge Johnson approved a settlement awarding class members two movie tickets and two orders of popcorn, $100,000 in attorneys' fees and costs, and incentive awards of $5,000 and $2,500 to the two class representatives. In other words, final resolution of these cases largely involved awards of certificates, vouchers or coupons, and did not result in excessive monetary awards based upon statutory damages, which in this case range from $29 million to $290 million.

However, in none of these cases had the court previously certified the class before considering a proposed settlement from the parties. For example, in *Soualian*, Judge Klausner had previously denied class certification, and only granted class status when presented with a fair and reasonable settlement:

> In interpreting the superiority requirement previously ... this Court denied certification on the grounds that a class action was not the superior method of adjudicating the class members' claims because a potentially massive adjudicating damage award (between $4.8 million and $48 million) would be disproportionate to any actual damage caused by the alleged violations.
>
> Now, the Parties are requesting conditional class certification for the purposes of settlement only. The proposed settlement terms, which place far less money at issue, ameliorate the Court's initial 23(b) concerns.

*Soualian v. Int'l Coffee & Tea, LLC*, CV 07–502 (docket no. 178, at 5), available at Plaintiff's Request for Judicial Notice, Ex 5, at 5. As no settlement similar to those cited by Plaintiff has been presented to the Court in this case, Plaintiff's argument that damages resulting from class certification will not be excessive or disproportionate is premature and speculative. Plaintiffs have therefore failed to show that the potential award of statutory damages is justified and proportional to any actual injury suffered by potential class members. Accordingly, the Court adopts its prior holding that Plaintiff's Motion for Class Certification fails to satisfy the superiority requirement of Rule 23(b)(3), as the magnitude of Defendant's statutory liability is enormous and completely out of proportion to any harm suffered by Plaintiff or potential class members. Minute Order dated Oct. 31, 2007 (docket no. 41) (citing *London v. Wal–Mart Stores, Inc.*, 340 F.3d 1246, 1255 n. 5 (11th Cir.2003); *Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir.1974)).

Furthermore, the Court is not persuaded by Plaintiff's argument that an increased risk of identity theft, however slight, is sufficient to constitute actual harm. (Reply at 3–4.) Plaintiff has not demonstrated how printing eight (8) digits on a credit card receipt will result in harm to a consumer that is any greater than printing five (5) digits. Plaintiff does not provide an example of a consumer who has actually incurred measurable damages as a result of Defendant's kiosks. On the other hand, Defendant has submitted the declaration of Mari Frank, an expert in identity theft issues. Ms. Frank has declared that the mathematical probability of discerning the remainder of the digits necessary to complete a transaction is minuscule, either 10,000,000:1 or 100,000,000:1.[3] In comparison, the odds of correctly picking all the numbers in California's Mega Millions Lottery game is 3,904,701:1. The Court therefore rejects Plaintiff's argument that a slight increase in the risk of harm is sufficient to justify class certification that may result in statutory damages ranging from $29 million to $290 million.

### C. Recent Decisions

Plaintiff cites a bundle of cases that have granted motions for class certification based

---

**3.** Given a receipt that prints 8 digits, the probability is 10:000,000:1 for a credit card account number that is 15 digits in length. The probability is 100,000,000:1 for a credit card account number that is 16 digits in length. Presumably, the probability of discerning the remaining digits of a credit card receipt properly truncated to 5 digits is either 10,000,000,000:1 or 100,000,000,-000:1.

upon FACTA.[4] The majority of these cases, however, were decided in the Northern District of Illinois, which is bound by the Seventh Circuit's decision in *Murray*. The Seventh Circuit declined to adopt the Ninth Circuit's decision to refrain from certifying class actions where damages are disproportionate to the actual harm suffered. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953–54 (7th Cir.2006) (rejecting the district court's decision to deny class certification based upon excessive damages). The only cases cited within this district to have granted class certification based upon FACTA are the three cases decided by Judge Selna, but these cases have been subsequently dismissed pursuant to the passage of H.R. 4008. Furthermore, the court in *Pirian v. In–N–Out* ruled on a Motion to Dismiss, not a Motion for Class Certification, and *White v. E–Loan, Inc.* did not involve class certification for failure to truncate credit card receipts. Accordingly, the Court does not find Plaintiff's citations to be sufficiently persuasive in its Renewed Motion for Class Certification.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Class Certification (docket nos. 28, 48, 50) is hereby **DENIED.**

**IT IS SO ORDERED.**

---

4. *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D.Ill.2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284 (N.D.Ill.2008); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill.2008); *Harris v. Circuit City Stores*, 2008 WL 400862 (N.D.Ill.2008); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D.Ill. 2008); *Halperin v. Interpark Inc.*, 2007 WL 4219419 (N.D.Ill.2007); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D.Ill.2007); *In re Farmers Ins. Co., Inc. FCRA Litigation*, 2006 WL 1042450 (W.D.Ok.2006); *Klingensmith v. Max & Erma's Restaurants, Inc.*, 2007 WL 3118505 (W.D.Pa.2007); *Reynoso v. South County Concepts*, SACV 07–373, 2007 WL 4592119 (C.D.Cal. 2007) (Selna, J.); *Medrano v. WCG Holdings, Inc.*, SACV 07–0506, 2007 WL 4592113 (C.D.Cal. 2007) (Selna, J.); *Kesler v. Ikea U.S. Inc.*, 2008 WL 413268 (C.D.Cal.2008) (Selna, J.); *Pirian v. In–N–Out Burgers*, 2007 WL 1040864 (C.D.Cal. 2007); *White v. E–Loan, Inc.*, 2006 WL 2411420 (N.D.Cal.2006).